# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 5:09CR0035-2 |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| JOSE NUNEZ-GARCIA, ) | |
| ) | By: Hon. James G. Welsh |
| *Defendant* ) | U.S. States Magistrate Judge |
| ) | |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's informed and written consent, this case was referred to the undersigned for the purpose of conducting a plea hearing.

The Grand Jury previously returned a Multi-count Indictment charging in **Count One** that beginning at an unknown date, but not later than February 12, 2009, and continuing until on or about April 29, 2009 this defendant knowingly and intentionally combined, conspired, confederated and agreed with other persons, both known and unknown to the Grand Jury, to commit the following offenses against the United States: (1) to possess with intent to distribute and to distribute fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C.§§ 841(a)(1) and 841(b)(1)(A); and (2) to possess with intent to distribute and to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C.§§ 841(a)(1) and 841(b)(1)(A). All in violation of Title 21, United States Code, Section

846; and charging in **Count Five** that on or about April 28, 2009 this defendant, acting as a principal and as an aider and abetter, did knowingly and intentionally distribute or possess with intent to distribute a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Sections 841(a)(1) and 841(b)(1)(c), and Title 18 United States Code, Section 2.

The plea hearing was conducted before the undersigned on March 2, 2010. The defendant was at all times present in person and with his counsel, Scott T. Hansen. The United States was represented by Ryan Souders, Assistant United States Attorney, and by Kenneth Duvall, a third year law student. Present to assist the defendant was a federally certified Spanish language interpreter. *See* Rule 28, Federal Rules of Criminal Procedure. The proceedings were recorded by a court reporter. *See* Rule 11(g). With the defendant's informed and written consent, the undersigned made a Rule 11 inquiry; the government presented a written proffer of evidence for the purpose of establishing an independent basis for the plea, and the defendant entered a plea of guilty to the felony offense charged in Count One of the Indictment.

## DEFENDANT'S RESPONSES TO RULE 11 INQUIRY

The defendant was placed under oath and addressed personally in open court. He expressly acknowledged that he was obligated to testify truthfully in all respects under penalty of perjury and that he understood the government's right, in a prosecution for perjury or false statement, to use against him any statement that he gives under oath. *See* Rule 11(b)(1)(A).

The defendant testified to the following personal facts: his full legal name is JOSE NUNEZ-GARCIA; he is thirty-one (31) years of age, and he attended school in Mexico approximately through the 11th grade. He understand some English; however, with the assistance of the Spanish language interpreter he testified that he was fully able to understand and participate in the proceedings. He testified that he had no medical condition, either physical or mental, which might interfere with his ability to understand and to participate fully in the proceeding, that he was using no alcoholic beverage, medication or drugs which might impair his ability to participate fully in the proceeding, that his mind was clear, and that he understood he was in court for the purpose of entering a plea of guilty to a felony offense which he could not later withdraw. Upon inquiry, the defendant's attorney represented that he had no reservations about the defendant's competency to enter a plea of guilty.

The defendant acknowledged that he had received a copy of the Indictment and that it had been fully translated and explained to him. He stated that he had discussed the charges with his attorney and had been given enough time to do so. He stated that he understood the nature of the charges against him in the Indictment and specifically understood the offense charged in Count One was a felony offense. *See* Rule 11(b)(1)(G). He testified that he had discussed any possible defenses with his attorney and that he had been given adequate time to prepare any defenses he might have to the charges. He stated that his decision to enter a plea of guilty to one of the charges had been made after consulting with his attorney, that he was fully satisfied with the services of his attorney, and that it was his intention and desire to enter a plea of guilty to the charge pending against him in Count One.

The defendant confirmed that he fully recognized and understood his right to have the Rule 11 hearing conducted by a United States district judge, and he gave his verbal and written consent

to proceed with the hearing before the undersigned United States magistrate judge. The defendant's written consent was filed and made a part of the record.

With the supervision of counsel for the government, the said third year law student informed the court that the defendant's proposed plea was being made pursuant to a written plea agreement. *See* Rule 11(c)(2). He then set forth the government's understanding of the plea agreement in some detail: including the agreement for the defendant to plead guilty to Count One of the Indictment [¶ A.1.]; the terms of the government's agreement to dismiss the remaining count of the Indictment at the time of sentencing [¶ A.3]; the defendant's express acknowledgment of both the mandatory minimum and the maximum statutory penalty for the offense charged in Count One of the Indictment [¶ A.1.]; the defendant's express understanding that he may be required to pay fees for his incarceration and supervised release, that he may be required to pay restitution, and that his assets may be subject to forfeiture [¶¶ A.1. and B.4.a.]; the defendant's express admission of his factual guilt to the offense charged in Count One [¶ A.1.]; the defendant's obligation to pay a $100.00 special assessment in full prior to entry of his guilty plea and the related restitution and assessment provision [¶¶ A.1. and B.4.a.]; the defendant's acknowledgment of the trial rights waived by entry of a voluntary plea of guilty [¶ A.2.]; the agreement's provision outlining the fact that sentencing is within the sole discretion of the court "subject to its consideration" of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a) [¶ B.1.]; the defendant's express recognition that he would not be allowed to withdraw his guilty plea irrespective of the sentence imposed by the court [¶ B.1.]; the defendant's stipulation that all matters pertaining to any of the counts of the charging document, including any dismissed counts, are relevant sentencing conduct [¶ B.2]; the parties' agreement concerning the applicability of the 2008 edition of the Sentencing Guidelines Manual and section

2D1.1(c)(4) [¶ B.2.]; the government's agreement not to object to the defendant being given the benefit of the "safety valve": provisions in Guideline section 5C1.1 b's and in 18 U.S.C. § 3553 [¶ B.2.]; the agreement's provision providing that to the extent that it was not inconsistent with the terms of the plea agreement each remains free to argue which guideline section(s) should or should not apply [¶B.2.]; the government's agreement to recommend a sentence at the low end of the applicable guideline range [¶ B.2.]; the acceptance of responsibility provision [¶ B.2.]; the substantial assistance provision [¶ B.3.]; the defendant's monetary obligations, including the terms of his obligation to pay a mandatory assessment of $100.00 per felony count of conviction [¶ B.4.a.]; the defendant's financial disclosure obligation [¶ B.4.b.]; the agreement's asset forfeiture provision[1] [¶ C.1.]; the defendant's express waiver of his right to appeal for any reason whatsoever [¶ D.1.]; the defendant's express waiver of his right to make any collateral attack on any judgment or sentence imposed by the court [¶ D.2.]; the defendant's abandonment of any seized property [¶ D.5.]; the defendant's waiver of all rights to access of investigation or prosecution records or information [¶ D.3.]; the defendant's express acknowledgment that he may be subject to deportation as a result of the offense charged in Count One [¶ D.6.]; the agreement's evidence proffer provision [¶ D.8.]; the terms of the defendant's duty to cooperate [¶ D.9]; the terms of the defendant's statute of limitations waiver [¶ E.]; the defendant's acknowledgment that he had been effectively represented in this case [¶ F.3.]; the parties express acknowledgment that the written plea agreement constituted a binding contractual understanding between the parties [¶ F.2.]; and the substance of the agreement's other terms and provisions. *See* Rule 11(b)(1)(B)–(N) and 11(c)(1)–(3).

---

[1] In accordance with the terms of the plea agreement an Order of Forfeiture was entered at the time the defendant entered his plea. [¶ C.].,

After which, the defendant was asked what his understanding of the terms of the agreement was, and he testified that his understanding was precisely the same as that set forth by the government's attorney. Counsel for the defendant, likewise, represented that his understanding was the same, and he further represented that he had reviewed each of the terms of the plea agreement with the defendant, and he was satisfied that the defendant understood all of its terms.

The defendant was then shown the plea agreement; and he affirmed it to be his signature on the document. He further testified that no one had made any other, different or additional promise or assurance of any kind in an effort to induce him to enter a plea of guilty in this case and that no one had attempted in any way to force him to plead guilty in this case. The agreement was then received, filed and made a part of the record, and it was noted for the record that the written plea agreement constitutes the best evidence of its terms, and as such it "speaks for itself."

After counsel for the government outlined the range of punishment for the offense charged in Count One of the Indictment, the defendant acknowledged that he understood the minimum statutory penalty for conviction of the offense charged in Count One of the Indictment to be confinement in a federal penitentiary for ten (10) years [2] and that he understood the maximum possible penalty provided by law for conviction of the offenses charged in Count One of the Indictment to be confinement in a federal penitentiary for life, a $4,000,000.00 fine, and a term of supervised release, or deportation and exclusion, after completion of any term of incarceration. *See*

---

[2] The defendant was informed that he could be sentenced to less than ten years imprisonment only if the government makes a motion pursuant to 18 U.S.C. § 3553(e) on his behalf [*See* ¶ B.3.] or if he qualifies for the "Safety Valve" exception set forth in 18 U.S.C. § 3553(f) [*See* B.2.].

Rule 11(b)((H)-(I). In addition, the defendant acknowledged that he understood that he would be required to pay a mandatory $100.00 special assessment per felony conviction count. *See* Rule 11(b)(1)(L).

The defendant then acknowledged that he knew his plea, if accepted, would result in him being adjudged guilty of a felony offense and that such adjudication may deprive him of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm.

The defendant was informed, and he expressly acknowledged, that the court's determination of his sentence would include consideration of multiple factors, including: the nature and circumstances of the offense; the defendant's history and characteristics; the seriousness of the offense; the need to promote respect for the law; the need to provide for just punishment and afford adequate deterrence; the need to protect the public; any determined need to provide the defendant with educational or vocational training, medical care or other correctional treatment in the most efficient manner; the kinds of available sentences; the pertinent sentencing guidelines and policy statements; the need to avoid unwanted sentence disparities; and any need to provide for restitution. He also acknowledged that he understood the court may order him to make full restitution to any victim and may require him to forfeit certain property to the government. *See* Rule 11(b)(1)(J)–(K).

The defendant testified that he and his attorney had talked about how the Sentencing Commission Guidelines might apply to his case and the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Guidelines and

other factors under 18 U.S.C. § 3553(a). *See* Rule 11(b)(1)(M). He stated that he understood that the court will not be able to determine the recommended guideline sentence for his case until after the pre-sentence report had been completed and he and the government each had an opportunity to challenge the facts reported by the probation officer.

The defendant then acknowledged that he knew the entry of a guilty plea constituted an admission of all of the elements of a formal felony charge, and he knew that irrespective of any sentence imposed by the court he would have no right to withdraw this guilty plea. *See* Rule 11(c)(3)(B). He acknowledged that he knew parole had been abolished and that he would not be released on parole. He further acknowledged that he knew and understood any sentence of incarceration imposed by the court would also include a period of "supervised release," and he knew any violation of the terms or conditions of such supervised release could result in his being returned to prison for an additional period of time. *See* Rule 11(b)(1)(H).

Pursuant to the terms of the plea agreement [¶ D.1.], the defendant expressly acknowledged that he understood that he was waiving all rights to appeal his conviction or any sentence which did not exceed the maximum penalty permitted by law. Likewise, pursuant to the terms of the plea agreement [¶ D.2.], he expressly acknowledged that he understood he was waiving all rights to challenge his conviction or his sentence in any post-conviction proceeding.

Each of his procedural rights surrendered on a plea of guilty was also explained: including, his right to plead not guilty to any offense charged against him and his right to persist in any such not guilty plea; his attendant right to a trial by an impartial jury; his right to counsel to assist in his

defense; his presumption of innocence, the obligation of the government to prove his guilt beyond a reasonable doubt, his right at trial to see, to hear, to confront, and to have cross-examined all witnesses presented against him; his right to decline to testify unless he voluntarily elected to do so in his own defense, his right to remain silent; his right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in his defense, and his right to a unanimous guilty verdict. *See* Rule 11(b)(1)(B)– (E). The defendant testified that he understood his right to plead not guilty and the attendant trial rights that he would waive by pleading guilty. *See* Rule 11(b)(1)(F).

In direct response to further questioning, the defendant also testified that he was pleading guilty to the offense charged in Count One because he had in fact knowingly possessed with intent to distribute one kilogram or more of a substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

To permit the court to determine whether an independent basis in fact existed for the defendant's plea, the government submitted an oral proffer which summarized the essential facts the government was prepared to prove at trial. The defendant and his counsel each represented that the statement fairly and accurately summarized the government's case. *See* Rule 11(b)(3).

After testifying that he had heard and understood all parts of the proceeding and after consulting with his attorney, the defendant waived a reading of the indictment. He was then called-upon for his plea, and he entered a plea of GUILTY to Count One alleging his violation of Title 21 United States Code, Section 846. The clerk then read the written guilty plea form to the defendant; after acknowledging it to be correct, the defendant executed it, and it was filed and made a part of the

record.

After entering his plea of guilty, after an independent basis for the plea was established, the defendant was again addressed personally, and he reconfirmed that his decision to plead guilty was fully voluntary and that it did not result from any force, threats, promises of leniency or other inducement of any kind (other than that expressly set forth in the plea agreement). *See* Rule 11(b)(2). The defendant also reconfirmed his complete satisfaction with the services and assistance of his attorney.

The defendant was then informed that acceptance of his guilty plea would be recommended to the presiding district judge, that a pre-sentence report would be prepared, that he would be asked to give information for that report, that his attorney may be present if he wished, and that he and his attorney would have the right to read the pre-sentence report and to file objections to it. The defendant was then remanded to the custody of the United States Marshal pending preparation of a pre-sentence report and acceptance of his guilty plea.

**GOVERNMENT'S EVIDENCE**

On 02/12/2009 a confidential informant then assisting a government investigation of illegal drug activities in Harrisonburg, Virginia, telephoned co-defendant Cotoc-Yac to arrange the purchase of methamphetamine. Pursuant to their telephone arrangements, the informant met with Cotoc-Yac and for $400.00 purchased 14.11 grams of a substance containing a detectable amount of methamphetamine. On 02/25/2009 the same informant again called Cotoc-Yac and arranged a second

purchase, and pursuant to the agreed arrangements, the informant met with Cotoc-Yac and for $250.00 purchased 3.71 grams of a substance containing a detectable amount of methamphetamine. On 03/05/2009 the same informant again contacted Cotoc-Yac and arranged and for 240.00 purchased 3.5 grams of a substance containing a detectable amount of methamphetamine. Prior to this third meeting with the informant, Cotoc-Yac was observed by police to leave his residence in Harrisonburg and go directly to the meeting site and return directly to his residence.

On 04/22/2009 a second confidential informant identified the defendant as his methamphetamine source of supply, made a recorded telephone call to the defendant, and arranged to meet the defendant at a particular church parking lot for the purpose of paying the defendant for 2 ounces of "ice" (pure methamphetamine). Their meeting was subject to police surveillance, and it was video recorded. During this meeting, this second informant paid the defendant $1,500.00; the defendant agreed to "front" this second informant's purchase of an ounce of "ice" once he paid the remainder of his drug debt. At the end of this meeting the defendant was followed by surveillance team members to a location on Amberly Road in Harrisonburg where co-defendant Lopez-Aguilara was then residing, and the defendant was seen to leave that location a short time later.

On 04/28/2009 this second informant met the defendant in the Food Lion parking lot in Harrisonburg; he paid the defendant $1,800.00 for a previous drug debt, and the defendant agreed to "front" an ounce of methamphetamine later that day. On the same date this same informant placed a recorded telephone call to the defendant to tell him that he was on his way, and he then met with the defendant in a church parking lot in Harrisonburg. When they met, the defendant told this informant that he was on his way to meet his source of supply. The defendant was then followed by police from

11

the church lot to the Amberly Road address, and the defendant was observed meeting with a Hispanic male in a vehicle registered to co-defendant Lopez-Aguilara. Shortly thereafter the defendant was observed leaving and again meeting with the second informant in the same church parking lot. In a drug transaction, which was audio and video taped, the defendant delivered 27.0 grams of methamphetamine and the informant delivered "buy money" in the amount of $600.00 to the defendant. When this transaction was completed, the defendant left the parking lot, the defendant was the subject of a police traffic stop; at that time he was found to be in possession of $2,156.00, including the $600.00 "buy money."

Based on various police information and observations, including those related to the defendant's dealings with co-defendant Lopez-Aguilara on 04/28/2009, a search warrant was obtained and executed at the trailer located at the Amberly Road address. During this search of Lopez-Aguilara's residence, the police seized 379.5 grams of methamphetamine (including 60.1 grams of "ice"), 452 grams of cocaine, a .38 caliber Victor S&W pistol (serial # 5241), two cellular telephones, a digital scale, packaging materials and other drug-related paraphernalia, miscellaneous "owe sheets" and other documents, and $1,200.00 in police funds provided earlier the same date to the informant to pay-back the defendant. After being apprised of his rights, co-defendant Lopez-Aguilara gave a voluntary statement to the police implicating himself in illegal drug activity and identifying Cotoc-Yac and the defendant as two of his drug customers.

One day later, on 04/29/2009, a confidential informant advised the police that a quantity of methamphetamine stored in an outbuilding had been missed by the police during the prior day's search of co-defendant Lopez-Aguilara's residence. Pursuant to a second search warrant search of this

12

residence, 649.6 grams of methamphetamine (including 71.3 grams of "ice") was seized.

A search, also pursuant to a search warrant, of the residence of co-defendant Cotoc-Yac located at Dutchmill Court in Harrisonburg on the same date resulted in the seizure of 51.8 grams of methamphetamine, 3.7 grams of cocaine, a digital scale, $982.00 in currency, and two cellular telephones. One of these seized telephones showed that the first confidential informant had called that phone number on 02/12/2009, 02/24/2009 and 03/05/2009.

The nature of the controlled substance and all weights of all drugs were proved by laboratory analysis.

## FINDINGS OF FACT

Based on the evidence, representations of counsel, and defendant's sworn testimony presented as part of the hearing, the undersigned submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea to the charge set forth in Count One of the Indictment;

2. The defendant is fully aware both of the nature of the charge set forth in Count One of the Indictment and of the consequences of his guilty plea;

3. The defendant is fully informed, and he understands, the applicable enumerated items set forth in Rule 11(b)(1)(A)–(N);

4. The defendant's plea of guilty was made pursuant to a fully voluntary written plea agreement;

5. The defendant's entry into the plea agreement and his tender of a plea of guilty to Count One was made with the advice and assistance of counsel;

6. The defendant knowingly and voluntarily entered his plea of guilty to Count One of the Indictment;

7. The defendant's plea of guilty did not result from force, threats, inducements or promises other than those promises contained in the written plea agreement;

8. The plea agreement complies with the requirements of Rule 11(c)(1); and

9. The evidence presents an independent basis in fact containing each essential element of the offense to which the defendant has entered a plea of guilty.

## RECOMMENDED DISPOSITION

Based on the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to the offense charged in Count One of the Indictment, that he be adjudged guilty said offense, and that a sentencing hearing be set for May 5, 2010 at 2:00 p.m. before the presiding district judge.

## NOTICE TO PARTIES

Notice is hereby given to the provisions of 28 U.S.C. § 636(b)(1)(c): Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by the rules of court. The presiding district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which an objection is made. The presiding district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The presiding district judge may also receive further evidence or recommit the matter to the undersigned with instructions. **A failure to file timely written objections to these proposed**

**findings and recommendations within fourteen (14) days could waive appellate review.**

The clerk is further directed to transmit a copy of this Report and Recommendation to all counsel of record, and at the conclusion of the fourteen-day period the clerk is directed to transmit the record in this matter to the presiding United States district judge.

DATED: 3rd day of March 2010.

_s/ James G. Welsh_
U.S. Magistrate Judge
