CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 04 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOSE NUNEZ-GARCIA, <br>    Petitioner, <br> v. <br><br> UNITED STATES OF AMERICA, <br>    Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 5:09CR0035 <br><br><br> By: Michael F. Urbanski <br> Chief United States District Judge |

## MEMORANDUM OPINION

Jose Nunez-Garcia, a former federal inmate who currently is awaiting deportation following revocation of his citizenship, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Nunez-Garcia seeks a temporary stay of deportation and also asks to be transported to the Western District of Virginia via a writ of habeas corpus ad testificandum. The government has responded to the motions. As discussed more fully below, the court **DENIES** the motion to stay and the motion for a writ of habeas corpus ad testificandum, but directs the clerk to set an evidentiary hearing and arrange for Garcia-Nunez to participate via video conference from immigration custody.

## BACKGROUND

On September 15, 2009 Nunez-Garcia was indicted on two counts related to a methamphetamine dealing conspiracy which began no later than February 12, 2009 and continued until April 29, 2009. ECF No. 1 at 1, 3. On February 26, 2010, Nunez-Garcia entered into a written plea agreement in which he pleaded guilty to Count 1 of the indictment. ECF No. 69 at 1. A change of plea hearing was held on March 1, 2010 in front of a United

States Magistrate Judge who recommended that Nunez-Garcia's plea agreement be accepted. ECF Nos. 73, 78. On May 6, 2010 judgment was entered against Nunez-Garcia and he was sentenced to a term of 70 months in the Bureau of Prisons to be followed by a 5-year term of supervised release. ECF No. 84 at 2-3.

Nunez-Garcia was born in Mexico and applied to become a United States citizen. As part of the naturalization application process, and during the time period he was involved in the methamphetamine conspiracy, Nunez-Garcia attested under oath in a naturalization interview that he had never committed a crime or offense for which he had not been arrested. On April 29, 2009, two weeks after his naturalization interview, Nunez-Garcia was arrested by local law enforcement, charged in connection with the methamphetamine conspiracy, and released on bond. Nunez-Garcia was scheduled for a naturalization ceremony on July 4, 2009. When he arrived at the naturalization ceremony, he was required to submit a follow-up questionnaire related to his immigration application and he stated that he had not been arrested or charged for violation of any law and affirmed the answers on his original application.

Following the federal indictment on the methamphetamine charges, Nunez-Garcia was arrested and on September 24, 2009 he was released on bond. On January 9, 2010 he was charged in state court with involuntary manslaughter, felony eluding, DUI, and child abuse. The charges arose out of an incident nine days earlier where police tried to stop him for driving erratically. Nunez-Garcia did not stop but led the police on a chase, which ended with his having a single car accident resulting in the death of his seventeen-year-old passenger. On November 15, 2010, Nunez-Garcia pleaded guilty plea to all of the charges except child abuse. He was sentenced to ten years on the aggravated DUI manslaughter charge with five years

suspended; two years on the eluding police charge; and twelve months, suspended, on the DUI charge. The 5-year sentence was to run consecutively to his federal sentence and the 2-year sentence was to run concurrently with his federal sentence. ECF No. 124 at 7-8. The child abuse charge was dropped. Nunez-Garcia was represented by Scott Hansen on both the state and federal charges.

Nunez-Garcia served seven years on the state charges before he began serving the 70-month federal sentence. ECF No. 117 at 3. On November 21, 2016, his federal sentence was reduced from 70 months to 57 months after an applicable sentencing guidelines provision was lowered and made retroactively applicable to him. ECF No. 119. In addition, he sought an order from the court declaring that his federal term of imprisonment run concurrently with his state term. ECF No. 122. The court granted him limited relief, finding that the two-year sentence for eluding police should run concurrently with his federal sentence. ECF No. 124.

On January 27, 2016 a complaint was filed against Nunez-Garcia in the Eastern District of Virginia alleging he had made false statements under oath as part of his application for naturalization. The complaint referred to the questions where he had stated that he had not committed a crime for which he had not been arrested during the time he was participating in the methamphetamine conspiracy. United States v. Nunez-Garcia, 1:16-cr-39 (E.D. Va. Jun. 2, 2016), at ECF Nos. 1 and 2. A bench trial was held on April 18, 2016 and he was found guilty. Id. at ECF No. 30.

On July 8, 2016 Nunez-Garcia was sentenced to time served and two years of supervised release on the false statement charges. As a condition of his supervised release, he was to be surrendered to a duly-authorized immigration official for deportation review in

accordance with established procedures provided by the Immigration and Naturalization Act. Id. at ECF No. 38, p. 4. That same day, an order was entered revoking his citizenship. Id. at ECF No. 40.

Nunez-Garcia appealed the conviction to the Fourth Circuit Court of Appeals which affirmed. United States v. Nunez-Garcia, No. 16-4415 (4th Cir. April 18, 2017). He then sought a writ of certiorari from the United States Supreme Court which denied his petition on February 20, 2018. Nunez-Garcia v. United States, No. 17-6426 (Feb. 20, 2018).

Nunez-Garcia currently is in deportation proceedings and is detained in ICE custody in Wakulla County Jail in Crawfordville, Florida. On May 21, 2018 he received notice that on the basis of the methamphetamine conviction he was subject to removal pursuant to §§ 237(a)(2)(B)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act. ECF No. 125 at 10. His counsel asserts that a deportation order was entered against him on or about November 6, 2018 and he has filed a timely appeal of that order with the Board of Immigration Appeals ("BIA"). ECF No. 145 at 2.

Petitioner filed the instant 28 U.S.C. § 2255 motion to vacate on October 25, 2018 and alleges that he received ineffective assistance of counsel in the methamphetamine case. He claims that during the plea negotiations his attorney told him that he did not have to worry about being deported because he had been in the United States for a long time. He claims the attorney also told him that he was about to be sworn in as a United States citizen and as soon as that happened he would not be deportable. ECF No. 125 at 5. As a result, he claims that his plea was involuntary and that if he had been accurately advised, he would not have entered the guilty plea. Id. at 7. Nunez-Garcia has filed a motion to temporarily stay deportation

4

proceedings pending adjudication of his habeas corpus claim and a request for a writ of habeas corpus ad testificandum to which the government has responded and Nunez-Garcia replied.

## APPLICABLE LAW

At issue is whether a district court has jurisdiction to temporarily stay an order of deportation pending adjudication of an underlying habeas case. In 1996 Congress passed the Immigration Reform and Immigrant Responsibility Act (IIRIRA) which, among other things, repealed the then-existing scheme for judicial review of final orders of deportation and replaced it with a more restrictive scheme. Hatami v. Ridge, 270 F.Supp.2d 763, 766-767 (E.D. Va. 2003) (citing 8 U.S.C. § 1252 et seq. and Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 474 (1999)).

Courts in the Fourth Circuit have cited 8 U.S.C. § 1252(g) to find that petitioners in circumstances similar to Garcia-Nunez are barred from obtaining a stay of a removal order. Section 1252 addresses judicial review of orders of removal and Section 1252(g) provides the following:

Exclusive Jurisdiction

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

In Hatami, a lawful permanent resident facing imminent removal from the United States sought a temporary stay of a removal order to allow him the opportunity to pursue a state habeas lawsuit. He was facing deportation after having been convicted of assault and battery and sentenced to twelve months in jail, with six months suspended for two years. He

5

alleged that he received ineffective assistance of counsel in the state adjudication because his attorney failed to advise him of the immigration consequences of pleading guilty to a crime carrying a penalty of more than one year and failed to negotiate or otherwise obtain a sentence of one day less than a year.[1] Hatami, 270 F.Supp.2d at 766. As part of his habeas corpus complaint, he sought a preliminary injunction staying the removal order until his state habeas corpus petition could be adjudicated. Id.

The district court denied relief, finding that § 1252(g) precluded consideration of Hatami's request for a temporary stay. In response to the argument that denial of the stay effectively denied his request for habeas relief, the court found he could continue to pursue his habeas lawsuit even after removal because his presence in Virginia was not required. Finally, the court noted that if Hatami should ultimately prevail on his habeas claim, he could seek re-entry to the country or otherwise take steps to address his immigration status. Id. at 768 (citing Smith v. Ashcroft, 295 F.3d 425, 428 (4th Cir. 2002)).

Hatami relied in great part on Mapoy v. Carroll, 185 F.3d 224 (4th Cir. 1999), even though Mapoy did not involve an underlying habeas claim. There, a petitioner was subject to an order of deportation and filed a complaint for injunctive relief and a petition for a writ of habeas corpus seeking a stay of deportation and an order releasing him from detention. Id. at 227. The INS opposed the motions but agreed it would not deport the petitioner until the district court considered the complaint and petition. Id. The INS argued that the district court did not have jurisdiction over the removal order and also that an injunction should not issue

---

[1] 8 U.S.C. § 1227(a)(2)(A)(i)(ii) provides that "Any alien who is convicted of a crime for which a sentence of one year or longer may be imposed is deportable."

because the petitioner could not show a substantial likelihood of success on the merits. Id. The district court granted a preliminary injunction staying a petitioner's deportation and issued an order directing the INS to release him from custody.

The Fourth Circuit applied § 1252(g) and found that the district court erred in finding it had jurisdiction over the order of deportation. "Congress could hardly have been more clear and unequivocal that courts shall not have subject matter jurisdiction over claims arising from the actions of the Attorney General enumerated in § 1252(g) other than jurisdiction that is specifically provided by § 1252. . . . Section 1252 provides that an alien who wishes to challenge a final order of removal must file a petition for review of such an order in the court of appeals." Id. at 230. Since Hatami and Mapoy, other district courts in the Fourth Circuit have ruled in a similar fashion. See Hutton v. West Virginia, No. 1:13CV186, 2014 WL 856489, *7, n. 10 (N.D. W.Va., 2014) (noting in 28 U.S.C. § 2245 habeas case that the district court lacked jurisdiction to grant petitioner's request for an order staying his pending removal proceedings) and Tobar-Barrera v. Napolitano, Civil Nos. RDB 09-3064 and RDB 10-0176, 2010 WL 972557 *2 (D. Md. 2010) (finding district court not authorized to enjoin removal proceedings pending before the immigration court, even though it had jurisdiction to issue a declaratory judgment that petitioner was entitled to a de novo asylum adjudication).

Nunez-Garcia points out that other courts have found that § 1252(g) does not apply to cases that do not "arise from" the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. In other words, he argues that a court may stay an order of removal to give it an opportunity

7

to adjudicate either an underlying matter, such as the § 2255 petition here, or a Federal Tort Claims Act case.

In Ragbir v. United States, No. 2:17-cv-1256-KM, 2018 WL 1446407 (D. N.J. Mar. 23, 2018), a district court issued a 30-day stay of removal so that a hearing could be held on a petition for corum nobis. The petitioner raised issues similar to the issue in this case insofar as he sought to challenge his underlying conviction for wire fraud and conspiracy in part by alleging ineffective assistance of counsel. Ragbir, 2018 WL 1446407 at *3. The court found it had authority to issue the stay, reasoning that (1) neither a corum nobis petition nor the motion to stay were a "cause or claim" that "aris[es] from" the Attorney General's discretionary actions within the meaning of § 1252(g); (2) Section 1252(g), as interpreted by Reno, "bars only judicial review of certain enumerated exercises of executive discretion to prosecute removal proceedings;" and (3) that the power to grant a stay is an inherent judicial power "incident to the court's jurisdiction over a coram nobis petition, which has a Constitutional dimension in that it ensures orderly review and meaningful access to the court." Id. at 7.

Although the opinion in Ragbir is detailed and thoughtful, this court respectfully declines to follow it because it conflicts with the holding in Mapoy that Congress clearly and unequivocally stated that courts do not have subject matter jurisdiction to consider final orders of removal. See Fed. Deposit Ins. Corp. v. Fagan, 459 F.Supp. 933, 939 (D.S.C. 1978) (commenting that a district court is bound by decisions of the Courts of Appeal of the circuit

8

until such decisions are changed). Thus, Ragbir provides no support for Nunez-Garcia's request for a stay.[2]

Nunez-Garcia also argues that this court has authority under the All Writs Act to temporarily stay the deportation order, citing in support Nken v. Holder, 556 U.S. 418, 426 (2009), and Michael v. I.N.S., 48 F.3d 657, 664 (2d Cir. 1995). Nken is distinguishable because it addressed the standard of review governing a stay of removal pending adjudication of a petition for review by a court of appeals. Courts of appeals have jurisdiction to review final orders of removal and they may prevent an order of removal from taking effect while adjudicating the petition. See, generally, 8 U.S.C. § 1252(b). The Court in Nken was called upon to decide whether the standard used to decide to stay a removal order is "clear and convincing evidence that the entry or execution of an order is prohibited by law," as set out in § 1252(f)(2), or whether the traditional standard for a stay should apply.[3] The Court determined that the traditional standard applies. Nken, 556 U.S. at 436. However that decision

---

[2] In addition, Ragbir differs from the instant case in that the petitioner there had exhausted his statutory appeals, whereas Nunez-Garcia's appeal to the BIA is pending and if the stay is denied, he will be able to appeal to the Eleventh Circuit Court of Appeals for relief. Counsel for Nunez-Garcia noted that the deportation order was entered against him on November 8, 2018 and he appealed it. Counsel spoke to a deportation officer who told her that appeals to the BIA by detained aliens were taking five to six months to resolve. If relief is denied by the BIA, Nunez-Garcia will have thirty days to appeal to the Eleventh Circuit Court of Appeals and may also seek a stay in that court. See 8 U.S.C. § 1252(b). The court in Ragbir granted a limited 30-day stay so that the case could receive proper consideration. Based on the current administrative proceedings, there is no reason to believe that Nunez-Garcia will be deported within the next thirty days.

[3] Under the "traditional standard," a court considers four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken, 556 U.S. at 425-426 (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

did not address a district court's ability to stay a removal action and does not offer authority for this court to do so.

Nor is <u>Michael v. I.N.S.</u> helpful to Nunez-Garcia. While the case does state that the All Writs Act provided the Courts of Appeal with an independent statutory basis to stay deportation pending ruling on a motion to reopen, the case was decided prior to enactment of the IIRIRA and does not address the exclusive jurisdiction provision of § 1252(g).

Nunez-Garcia also cites <u>Arce v. United States</u>, 899 F.3d 796 (9th Cir. 2018), where the Ninth Circuit held that § 1252(g) did not preclude an order staying removal when a plaintiff sued the United States under the Federal Tort Claims Act (FTCA) for damages resulting from an earlier wrongful removal that occurred in violation of a temporary stay issued by the Court of Appeals. The court found that because the plaintiff was not attacking the removal itself, the claims did not arise from the removal order but from violation of an earlier court's order, and therefore the district court had jurisdiction to stay the removal. <u>Id.</u> at 800.

The Eighth Circuit reached the opposite conclusion on similar facts in <u>Silva v. United States</u>, 866 F.3d 938 (8th Cir. 2017). There, the court rejected an argument, among others, that §1252(g) does not apply to claims under the FTCA or <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), because the causes of action are not specified in the statute. The court commented that "[t]he limitation on jurisdiction . . . . applies to '*any* cause or claim by or on behalf of any alien' that arises from a decision to execute a removal order, so it was unnecessary for Congress to enumerate every possible cause or claim." <u>Id.</u> at 941. (emphasis in original).

In sum, courts are in conflict about the reach of § 1252(g) and whether a district court can stay an order of deportation, even temporarily. Given that courts in the Fourth Circuit have thus far found that district courts do not have such authority, this court **DENIES** Nunez-Garcia's motion to stay deportation proceedings pending against him.

Nunez-Garcia asks in the alternative for the court to issue a writ of habeas corpus ad testificandum to allow him to participate in an evidentiary hearing on his petition. Inasmuch as it appears that Nunez-Garcia is likely to remain in this country for a few more months, the clerk is directed to set an evidentiary hearing on Nunez-Garcia's § 2255 petition and to arrange his appearance by video conference from immigration custody. The motion for writ of habeas corpus ad testificandum is taken under advisement pending the scheduling of this hearing.

**ENTERED:** 03-01-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge