CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
4/29/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOSE NUNEZ-GARCIA, | ) | |
|     Petitioner | ) | Civil Action No. 5:09-CR-035 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Michael F. Urbanski |
|     Respondent | ) |     Chief United States District Judge |
| | ) | |

**MEMORANDUM OPINION**

Jose Nunez-Garcia, initially proceeding pro se but later represented by counsel, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that his attorney provided ineffective assistance of counsel that ultimately resulted in his deportation. ECF Nos. 127, 128. This matter is before the court on respondent's motion to dismiss. ECF No. 169. An evidentiary hearing was held on July 24, 2019. Having reviewed the record and the pleadings, the court **GRANTS** respondent's motion to dismiss and **DISMISSES** Nunez-Garcia's petition.

I. **Background**

Nunez-Garcia was born in Mexico, immigrated to the United States as a teenager, and in 2009, applied to become a United States citizen. Presentence Investigation Report ("PSR"), WDVA case, ECF No. 121 at 10.[1] As part of the naturalization application process, and during

---

[1] The § 2255 motion involves two underlying criminal matters: the instant case, which is a drug conspiracy prosecution filed in this district, United States v. Nunez-Garcia, No. 5:09-cr-00035 (W.D. Va. filed Sept. 15, 2009), and a prosecution for making a false statement under oath filed in the Eastern District of Virginia, United States v. Nunez-Garcia, No. 1:16-cr-00039 (E.D. Va. filed Feb. 11, 2016). Citations to the instant case will be to "WDVA case," followed by the ECF number. Citations to the false statement case will be to "EDVA case," followed by the ECF number.

the time period he was involved in a methamphetamine conspiracy, Nunez-Garcia attested under oath in a naturalization interview on April 15, 2009 that he had never committed a crime or offense for which he had not been arrested and had never sold illegal drugs or narcotics. Sent. Hr'g Tr. in EDVA case, ECF No. 49 at 8; N-400 form, ECF No. 17-1 at 8. Nunez-Garcia was scheduled for a naturalization ceremony on July 4, 2009 and received notification of the ceremony on a N-445 form dated June 4, 2009. EDVA case, ECF No. 20-1 at 65-66. On that form, he checked a box indicating that he had never knowingly committed a crime or offense for which he had not been arrested and had never illicitly trafficked in drugs or marijuana. Id. at 66. When he arrived at the naturalization ceremony, he submitted the form prior to being sworn in as a citizen. Id. at 65.

On April 29, 2009, two weeks after his naturalization interview, Nunez-Garcia was arrested by local law enforcement and charged in state court in connection with the methamphetamine conspiracy. He was released on bond. The state charges were later dismissed. On September 15, 2009, Nunez-Garcia was indicted in federal court on two counts related to the methamphetamine conspiracy, which began no later than February 12, 2009 and continued until April 29, 2009. WDVA case, ECF No. 1 at 1, 3.

On February 26, 2010, Nunez-Garcia entered into a written plea agreement in which he pled guilty to Count One of the indictment. WDVA case, ECF No. 69 at 1. In the plea agreement he acknowledged that he understood that he might be subject to deportation from the United States as a result of his conviction for the drug offense. Id. at 10.

A change of plea hearing was held on March 1, 2010 in front of a United States Magistrate Judge who recommended that Nunez-Garcia's plea agreement be accepted.

WDVA case, ECF Nos. 73, 78. At the plea hearing, the court advised him that he "may be subject to deportation from the United States as a result of his conviction for this offense." Plea Hr'g Tr. in WDVA case, ECF No. 169-1 at 22. The district court adopted the findings and recommendation of the magistrate judge and on May 6, 2010, judgment was entered against Nunez-Garcia. He was sentenced to a term of 70 months in the Bureau of Prisons to be followed by a five-year term of supervised release. WDVA case, ECF No. 84 at 2-3.

Following the federal indictment on the methamphetamine charges, Nunez-Garcia was arrested after he was involved in a single-car accident which resulted in the death of his 17-year-old passenger. WDVA case, ECF No. 169-8 at ¶ 31.[2] On January 9, 2010 he was charged in state court with involuntary manslaughter, felony eluding, DUI, and child abuse, all arising from the car accident. Id. On November 15, 2010, Nunez-Garcia pled guilty to all of the charges except child abuse, and was sentenced to ten years on the aggravated DUI manslaughter charge with five years suspended; two years on the eluding police charge; and twelve months, suspended, on the DUI charge. The five-year sentence was to run consecutively to his federal sentence and the two-year sentence was to run concurrently with his federal sentence. WDVA case, ECF No. 124 at 7-8. The child abuse charge was dropped. Nunez-Garcia was represented by attorney Scott Hansen on the 2009 state charges, and also on the 2009 federal drug charges.

Nunez-Garcia served seven years on the state charges before he began serving the 70-month federal sentence. WDVA case, ECF No. 117 at 3. On November 21, 2016, his federal

---

[2] This document is the PSR produced in the EDVA case, but reproduced herein by the government in the WDVA case.

3

sentence was reduced from 70 months to 57 months after an applicable sentencing guidelines provision was lowered and made retroactively applicable to him. WDVA case, ECF No. 119. In addition, he sought an order from the court declaring that his federal term of imprisonment run concurrent with his state term. WDVA case, ECF No. 122. The court granted him limited relief, finding that the two-year sentence for eluding police should run concurrently with his federal sentence. WDVA case, ECF No. 124.

On January 27, 2016, a complaint was filed against Nunez-Garcia in the Eastern District of Virginia alleging he had made false statements under oath as part of his application for naturalization, in violation of 18 U.S.C. § 1015(a). The complaint referred to the questions where he had stated that he had not committed a crime for which he had not been arrested during the time he was participating in the methamphetamine conspiracy. EDVA case, ECF Nos. 1 and 2. Nunez-Garcia was in state custody at the time an arrest warrant was issued. On January 28, 2016, he was released to the custody of the federal marshals. A bench trial was held on April 18, 2016 and he was found guilty on the false statement charges. EDVA case, ECF No. 30.

On July 8, 2016, Nunez-Garcia was sentenced to time served and two years of supervised release on the false statement charges. As a condition of his supervised release, he was to be surrendered to a duly-authorized immigration official for deportation review in accordance with established procedures provided by the Immigration and Naturalization Act. EDVA case, ECF No. 38 at 4. That same day, an order was entered revoking his citizenship. EDVA case, ECF No. 40.

Nunez-Garcia appealed the conviction to the Fourth Circuit Court of Appeals which affirmed. United States v. Nunez-Garcia, No. 16-4415 (4th Cir. April 18, 2017). He then sought a writ of certiorari from the United States Supreme Court which denied his petition on February 20, 2018. Nunez-Garcia v. United States, 138 S.Ct. 979 (2018).

On May 21, 2018, Nunez-Garcia received notice that on the basis of the methamphetamine conviction he was subject to removal pursuant to Sections 237(a)(2)(B)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act. WDVA case, ECF No. 125 at 10. An order of deportation was entered and Nunez-Garcia was removed to Mexico in late April 2019. WDVA case, ECF No. 164 at 2.

Petitioner filed the instant § 2255 motion to vacate on October 25, 2018 and alleges that he received ineffective assistance of counsel in the WDVA methamphetamine case. He claims that during the plea negotiations his attorney told him that he did not have to worry about being deported because he had been in the United States for a long time. He claims the attorney also told him that he was about to be sworn in as a United States citizen and as soon as that happened, he would not be deportable. WDVA case, ECF No. 125 at 5. As a result, he claims that his plea was involuntary and that if he had been accurately advised, he would not have entered the guilty plea. Id. at 7. The government counters that the motion to dismiss is untimely and that Nunez-Garcia cannot establish prejudice or constitutionally defective performance under Strickland v. Washington, 466 U.S. 668 (1984).

## II. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that

5

"the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petition alleges a sentencing error that is neither constitutional nor jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir.) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

### III.  Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland, 466 U.S. at 687. In order to establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: He must show both that (1) counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge

counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When a petitioner argues that he received ineffective assistance of counsel as part of a plea agreement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In the context of guilty pleas that have immigration consequences, the Supreme Court has held that because the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment, it is critical for counsel to inform a noncitizen client that he faces a risk of deportation. Padilla v. Kentucky, 559 U.S. 356, 373-374 (2010). Padilla was a lawful permanent resident of the United States when he was charged with transporting a large quantity of marijuana in a tractor-trailer. Id. at 359. Prior to entering a plea bargain, Padilla's counsel told him that he did not have to worry about his immigration status because he had been in the United States for a long time, which was patently incorrect advice. Padilla pled guilty to drug charges that made his deportation virtually mandatory. The Court found that Padilla's attorney could easily have determined that the plea was going to make Padilla eligible for deportation simply by reading the relevant statue and held that when it is clear that deportation will be the result of a guilty plea, the attorney has an equally clear duty to give correct advice. Id. at 369.

7

To show prejudice under Strickland in the context of a plea agreement based on bad advice, a defendant must show that there was a reasonable probability that but for his counsel's errors, he would not have pled guilty but would have insisted on going to trial. Lee v. United States, 137 S.Ct. 1958, 1965-1969 (2017) (citing Hill v. Lockhart, 474 U.S. at 59). Courts will not upset a plea solely because a defendant makes a post hoc assertion that he would have pled guilty but for his attorney's deficiencies. Rather, courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 137 S.Ct. at 1967.

**IV. Timeliness of Petition**

Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year limitations period set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Nunez-Garcia's criminal judgment became final for purposes of the statute of limitations on May 24, 2010. Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. App. P. 4(b)(1)(A). The one-year limitations period set out in § 2255(f)(1) ran on May 24, 2011. Because Nunez-Garcia did not file his § 2255 motion until October 25, 2018, it is time-barred under

that section of the statute. However, Nunez-Garcia argues that he did not become aware of the fact that he was going to be deported until July 11, 2018 and that he filed his motion to vacate within one year of that date, in accordance with § 2255(f)(4).

For purposes of § 2255(f)(4), the statute of limitations begins to run when the petitioner knows, or through the exercise of due diligence could have discovered, the important facts and not when he recognizes their legal significance. United States v. Caro, 683 F. App'x 232, 233 (4th Cir. 2008) (citing Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)). The test under Section 2255(f)(4) is an objective test, requiring in this case for the court to determine when a duly diligent person in the petitioner's circumstances would have discovered that he was going to be deported because of the 2010 conviction. See Hannigan v. United States, 131 F.Supp.3d 480, 488 (E.D. N.C. 2015) (citing Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000)). Due diligence does not require maximum feasible diligence, but only reasonable diligence. A petitioner need not exhaust every imaginable option, but should make reasonable efforts. United States v. Longshore, 644 F.supp.2d 658, 661 (D. Md. 2009) (citing Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) and Wims, 225 F.3d at 190 n. 4).

The government contends that Nunez-Garcia could have discovered the facts supporting his claim as early as 2010 when he was sentenced, because he was put on notice of facts suggesting he might be deported following his criminal case, and in any event, no later than July 8, 2016, when he pled guilty to the charges that he had lied on his application for naturalization. Because it is clear from the record that Nunez-Garcia knew as of July 8, 2016 that he faced deportation, the court does not address the argument that he knew in 2010 that he was at risk of being deported.

9

On April 18, 2016, the court found Nunez-Garcia guilty of unlawful procurement of citizenship or naturalization because he had knowingly made a false statement for purposes of obtaining citizenship. Plea Hrg. Tr. in EDVA case, ECF No. 45 at 116. Sentencing was set for July 8, 2016.

The PSR filed in the EDVA case on June 24, 2016 noted that Nunez-Garcia faced the loss of citizenship and removal from the United States following completion of his custodial term. WDVA case, ECF No. 169-8.[3] Also, in the sentencing memorandum filed by Nunez-Garcia's attorney on July 1, 2016, the attorney stated that as a consequence of his conviction for committing fraud during the naturalization process, he was going to lose his citizenship status and would "have to fight deportation from this country." EDVA case, ECF No. 36 at 5; WDVA case, ECF No. 169-6 at 5.

At the July 8, 2016 sentencing hearing, Nunez-Garcia's attorney stated to the court that the government was going to present an order to revoke his citizenship and that when he was released from custody he would go into deportation proceedings which were likely to result in his deportation to Mexico. Sent. Hr'g Tr., EDVA case, ECF No. 49 at 5-6; WDVA case, ECF No. 169-3 at 5-6. Finally, as part of the judgment in his case entered on July 8, 2016, his citizenship was revoked and as a special condition of his supervised release, he was "to be surrendered to a duly-authorized immigration official of the Dept. of Homeland Security U.S. I.C.E. for a deportation review. If deported, the defendant shall remain outside the U.S." EDVA case, ECF Nos. 37, 38 at p. 4.

---

[3] See n. 2, supra.

Nunez-Garcia argues that none of these warnings were sufficient to put him on notice that he necessarily would be deported and that he did not know he was going to be deported until he received the notice to appear on May 21, 2018. He argues that the statement in the PSR was couched in a discussion of his inability to pay any fines or costs due to his indigence and that there is no indication of the detail with which his counsel reviewed the PSR with him. However, at the hearing, Nunez-Garcia's attorney stated that she had reviewed the PSR with him and they had no objection to it. Sent. Hr'g Tr. in EDVA case, ECF No. 49 at 3. Nunez-Garcia has never stated that he did not understand the contents of the PSR and there is no basis in the record for finding that his attorney did not explain it to him.

Nunez-Garcia further argues that there is no indication that he was given a copy of the sentencing memorandum or informed of its contents. However, even if he did not see a copy of that document, his attorney repeated the arguments at the sentencing hearing, stating that "He will go into deportation proceedings, and likely, that will result in his deportation to Mexico." EDVA case, ECF No. 36 at 5. That verbal assertion was enough to put him on notice that he was at risk of being deported and trigger the statute of limitations. See Clarke v. United States, 703 F.3d 1098, 1100 (7th Cir. 2013) (finding petitioner had duty of due diligence to inquire further when attorney told her that pleading guilty might have immigration consequences); United States v. Deptula, No. 5:10-cr-82-6, 2016 WL 7985815 at *7 (D. Vt. 2016) (finding defendant who was told that his guilty plea "may" affect his right to remain in the United States was on notice of deportation consequences, triggering statute of limitations); and Kondratyuk v. United States, No. C16-0528, 2016 WL 3976576 (W.D. Wa. 2016) (concluding that attorney's warning prior to guilty plea that plea would likely lead to removal

11

from the United States and that he could make no guarantee about the sentence the judge would impose triggered duty of diligent inquiry).

Finally, at the evidentiary hearing, Nunez-Garcia testified that he learned in 2016 that he would be deported. In response to testimony by attorney Hansen about his representation of Nunez-Garcia in 2009 and 2010, Nunez-Garcia stated the following on rebuttal:

> He never – he never told me that if I signed the wrong questions, I'm going to lose my citizenship. He never say that. . . . when I say I was a citizen of the United States, he said he's good to go. So I never say – he never told me that. I never knew in my life I was going to get deported if I sign these questions. <u>In 2016 is when I know</u>.
> . . .
>
> He never say – he never told me that if I sign these questions wrong that I'm going to get – I'm going to lose my citizenship. We never talk about this because he already say – when he was sitting on the chair, he say, Oh, yeah, I told my client what he say. If I told him I was a citizen of the United States or I was in process, why he going to say that? I don't understand that. <u>Plus, I never knew in my life I was going to get deported until 2016 when my attorney in Alexandria explain it to me, everything, about the questions</u>.

Evid. Hr'g Tr., in WDVA case, ECF No. 176 at 82-83 (emphasis added). Nunez-Garcia's attorney attempted to salvage his testimony by asking him if he found out that it was an aggravated felony when received his notice to appear on May 21, 2018, to which he replied, "Yes, correct." Evid. Hr'g Tr., in WDVA case, ECF No. 176 at 83. However, it is clear from his testimony, supported by the other evidence in the record, that he knew as of July 8, 2016, that he was facing removal proceedings.

Based on the foregoing, the court finds that Nunez-Garcia received notice that he was facing removal proceedings at least as early as July 8, 2016. Accordingly, the statute of limitations began to run at that time and he had until July 8, 2017 to file his § 2255 motion. He did not give the motion to jail authorities for filing until October 20, 2018, and therefore,

12

it is time-barred. Because the court finds that Nunez-Garcia's petition is time-barred, it does not address his claim on the merits.

## CONCLUSION

Based on the foregoing, the court finds that Nunez-Garcia's claim is time-barred. Therefore, the court **GRANTS** the government's motion to dismiss, ECF No. 169, and **DENIES** Nunez-Garcia's § 2255 motions for relief. ECF Nos. 127, 128. All other pending motions are **DENIED** as moot. Because Nunez-Garcia has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate Order will be entered.

Entered: April 29, 2020

Michael F. Urbanski
Chief United States District Judge